FILED

2018 Mar-12  PM 02:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| Vincent Miller | ) | Civil Action Number: |
| | ) | |
| Plaintiff, | ) | |
| | ) | _____ |
| v. | ) | |
| | ) | **JURY DEMAND** |
| Jesse Creek Mining, LLC; and | ) | |
| Jamas Technology, Inc. | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

## I. INTRODUCTION

1. This action is brought to recover unpaid compensation the defendants owe to the plaintiff for violations of the Fair Labor Standards Act ("FLSA"). During the relevant time period, the defendants, operating as a single employer and/or joint employer, have utilized a uniform policy and practice of failing to calculate overtime correctly and/or refusing to pay employees overtime wages as required. The plaintiff also seeks back pay and resinstatement because the defendants retaliated against him when he complained about the defendants' illegal practices by terminating his employment.

2. This action is brought pursuant to the FLSA, 29 U.S.C. §201, *et seq.*, for equitable and declaratory relief and to remedy violations of the wage

provisions of the FLSA by the defendants. The plaintiff requests certification as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all individuals who were employed by the defendants as Security Guards during the relevant time period. *See* Ex. A (Consent to Join Form).

3.      This action also seeks equitable and legal relief to redress unlawful discrimination based on race, national origin, retaliation, ancestry and ethnicity against plaintiff Vincent Miller. The suit is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended by the Civil Rights Act of 1991, (hereinafter "Title VII"), and 42 U.S.C. §1981 (hereinafter "§1981"), which provide for relief against discrimination, including illegal harassment, in employment. The plaintiff seeks a declaratory judgment, injunctive relief, and other equitable remedies, including back pay and reinstatement, as well as compensatory and punitive damages, costs, attorneys' fees and expenses.

## II.    JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the plaintiff's FLSA claims pursuant to 28 U.S.C. §1331. The Court has subject matter jurisdiction over the plaintiff's employment discrimination claims pursuant to 28 U.S.C. §1331, 1343(a)(4), 2201, 2202, and 42 U.S.C. §2000e-5(f)(3).

5.    The defendants Jesse Creek Mining and Jamas Technologies, Inc. are a single employer and/or joint employer under the FLSA, Title VII, and 42 U.S.C. §1981 and are subject to personal jurisdiction in the State of Alabama for the purpose of this lawsuit.

6.    The unlawful employment practices alleged were committed by the defendants within Shelby County, Alabama. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and 42 U.S.C. §2000e-5(g).

7.    The plaintiff requests a jury trial on all equitable claims and defenses and all issues triable by jury.

## III.    ADMINISTRATIVE PREREQUISITES

8.    The plaintiff has fulfilled all conditions precedent to the institution of this action under Title VII. The plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 180 days of the occurrence of the last discriminatory act. The plaintiff timely filed this lawsuit within 90 days of the receipt of Dismissal and Notice of Rights from the EEOC.

9.    The plaintiff's Fair Labor Standards Act claims and 42 U.S.C. §1981 claims do not require administrative exhaustion prior to filing suit.

## III.    PARTIES

10.    The defendant Jesse Creek Mining, LLC ("Jesse Creek" or "defendant") is a

Delaware limited liability company which conducts business within the State of Alabama. The defendant operates a coal mining operation in Montevello, Alabama. The defendant paid a portion of the plaintiff's wages and was the plaintiff's employer within the meaning of the FLSA. The defendant acted as a single employer and/or joint employer of the plaintiff with the defendant Jamas Technology, Inc. within the meaning of the FLSA.

11.    The defendant Jamas Technology, Inc. ("Jamas" or "defendant") is an Alabama limited liability company which is located in and conducts business within the State of Alabama. The defendant operates a coal mining operation in Montevallo, Alabama. The defendant paid a portion of the plaintiff's wages and was the plaintiff's employer within the meaning of the FLSA. The defendant acted as a single employer and/or joint employer of the plaintiffs with the defendant Jesse Creek Mining, LLC within the meaning of the FLSA.

12.    Plaintiff Vincent Miller ("plaintiff" or "Miller") is a Native American citizen of the United States, is over the age of nineteen (19), and was a resident of Birmingham, Alabama during the relevant time period. Miller was employed as a Security Guard by defendants Jesse Creek Mining, LLC and Jamas Technology, Inc. as a single employer and/or joint employer as defined by the FLSA, Title VII and 42 U.S.C. §1981. The plaintiff's race, national origin, ancestry, lineage, and ethnicity are Native American. The plaintiff was

employed by the defendants as a Security Guard for the Montevallo, Alabama coal mine from approximately July 2016 until March 25, 2017.

## V.   STATEMENT OF FACTS

13.   The plaintiff re-alleges and incorporates paragraphs 1 through 12 with the same force and effect as if fully set out in specific detail herein below.

Jesse Creek Mining, LLC and Jamas Technology, Inc. Are A Single And/Or Joint Employer.

14.   Jesse Creek Mining, LLC and Jamas Technology, Inc. (collectively "defendants") operate as a single employer and/or a joint employer. Virtually all of the hourly employees of Jesse Creek were first employed by Jamas Technology, Inc. Jamas will hire employees for the first ninety days, and then the employee will become a Jesse Creek employee the next day with no change in the employee's job duties. The Jamas employees receive Jesse Creek training and report to Jesse Creek supervisors throughout each shift.

15.   Jason Ferguson, who worked for defendants, told the plaintiff he could get him a job at "Jesse Creek Coal Company" that paid $17.00 per hour. Ferguson told the plaintiff that the job was security work at the site.

16.   The plaintiff interviewed with Manager Ray Wilson (Caucasian) about a Security Guard position. Wilson stated he owned Jamas Technology, Inc. Wilson told the plaintiff "your pay check says Jamas Technology, but you

work for Jesse Creek." Wilson explained that the plaintiff's job is an important part of the work that goes on at Jesse Creek. Wilson told the plaintiff he would be paid $17.00 per hour.

17. Manager Ray Wilson took the plaintiff to the Jesse Creek property and the work site office. Wilson introduced the plaintiff me to Foreman Jerry Stroupe (Caucasian), who has an office in the Jesse Creek offices. Stroupe told the plaintiff that his Security Guard job duties included keeping the mine office clean, making coffee, and writing a shift report. Stroupe said he worked with Jesse Creek Supervisor Carey Harwood (Caucasian), who is the highest ranking supervisor on the work site.

18. Supervisor Carey Harwood had a separate office on the property. Every day, Harwood told the Security Guards which areas to watch and the amount of times to spend on each area. Harwood, Wilson and Stroupe worked together as a team.

19. In addition, Jamas hired employees to work for Jesse Creek. Manager Ray Wilson hired truck drivers and crew workers to perform coal mining work at the site. Wilson hired them and Jamas paid them. If they stayed at the work site long enough, Jesse Creek might hire them eventually. However, when they became Jesse Creek employees their job duties remained the same.

20. I was told that Jesse Creek paid Wilson for the employees he hired and for each hour those employees worked for Jesse Creek.

<u>Jesse Creek Mining, LLC and Jamas Technology, Inc. Violated the Fair Labor Standards Act.</u>

21. When the plaintiff was hired, Manager Ray Wilson was told the plaintiff he would be paid $17.00 per hour for each hour worked with a standard forty (40) hour work week. The plaintiff was told he would be paid overtime when he was required to work more than forty (40) hours per week.

22. Therefore, the FLSA required the defendants to pay the plaintiff and other Security Guards $25.50 for each hour worked over forty (40) hours per week. Instead, the defendants paid the plaintiff $15.00 per hour for each hour worked and $22.50 for each hour worked over forty (40) hours per week.

23. The defendants paid the plaintiff these wages on a wage check, less deductions for Federal Tax Withholding, Social Security, and Medicare.

24. The defendants also paid the plaintiff $2.00 per hour for each hour worked, regardless of whether those hours were straight time or overtime hours.

25. The defendants paid the plaintiff the $2.00 per hour wage on a separate check, which did not have any deductions for Tax Withholding, Social Security, or Medicare.

26. The plaintiff complained about this practice to Manager Jerry Stroupe. Stroupe

exploded with anger, cursed at him repeatedly, and asked the plaintiff why he was complaining. Stroupe stated that this money was "tax free money" and said he should not complain.

27.    During this tirade, Stroupe was so angry that the plaintiff was afraid he was going to physically attack him. Stroupe's face was read, he was screaming and cursing repeatedly, and was screaming so loud that he was spitting in the plaintiff's face. The plaintiff just looked down at his feet to avoid the spit and remained silent because he needed the job.

Jesse Creek Mining, LLC and Jamas Technology, Inc. Violated Title VII and 42 U.S.C. §1981.

28.    The defendants failed to publish or disseminate any policy which prohibited illegal discrimination, including illegal harassment, during the plaintiff's employer. The defendants failed to inform the plaintiff that the law prohibits companies from retaliating against an employee who complains about discrimination. The defendants failed to inform the plaintiff about alternative avenues for complaints of discrimination and harassment. Upon information and belief, the defendants have published and distributed such a written policy after the plaintiff was terminated and filed a charge of discrimination with the EEOC.

29.    Manager Jerry Stroupe (white male) made frequent unwelcome and offensive comments about Native Americans to the plaintiff. During the plaintiff's employment, Stroupe frequently made unwelcome and offensive jokes and comments about the plaintiff's Native American heritage. For example, Stroupe frequently called the plaintiff "Chief" or would say "how!" instead of hello or hi.

30.    On or about March 10, 2017, the plaintiff complained to Manager Stroupe that his pay was incorrect. After the plaintiff complained that the defendants were not paying him correctly, Stroupe unloaded a string of profanity upon the plaintiff, which included calling him a "dirty Indian," a "cocksucker," "stupid," and "ignorant."

31.    The next day when the plaintiff came to work, Stroupe seemed to have calmed down from the day before. The plaintiff respectfully asked Stroupe not to disrespect and insult him. In response, Stroupe immediately told the plaintiff he was fired.

32.    The following day, Manager Ray Wilson called the plaintiff and sent him a couple of text messages. Wilson communicated that he had talked it over with Carey Harwood and they decided he couldn't be fired for asking Stroupe not to swear at him or call him names. Wilson asked the plaintiff to meet him at Starbucks on Sunday. Wilson told the plaintiff he could come back to work.

The plaintiff reported to work but was told he was being placed on a ninety (90) day probationary period.

33. On March 25, 2017, Foreman Jerry Stroupe told the plaintiff to turn off the lights on coal mining equipment or be terminated. The plaintiff responded to Stroupe that he was not trained to use that equipment and had no idea how to turn off the lights. Stroupe told the plaintiff he was fired.

34. The next day, Manager Ray Wilson told the plaintiff he supported Stroupe's decision to terminate him. Wilson said the reason the plaintiff was terminated was because he failed to notice a fuel truck which entered the property and failed to record it in a the log book. This was not true and, even if it were true, the only trucks that might have come onto the property were during the time when the plaintiff was occupied with Stroupe. Moreover, the defendants and Wilson were aware that Security Guards did not log every fuel truck which came on the property so this was not a basis for discipline or termination.

35. The defendants did not have or distribute a policy which prohibited illegal discrimination, including harassment, or retaliation. The defendants did not have or distribute a policy or notice which informed employees that they could complain about illegal discrimination, including harassment, or retaliation or that provided alternative avenues to complain when a supervisor was the alleged harasser.

36.   Upon information and belief, the defendants developed and distributed a policy which purports to prohibit illegal discrimination, illegal harassment, and/or retaliation after the plaintiff filed a charge of discrimination with the EEOC.

37.   On or about June 19, 2017, Miller filed a charge of discrimination with the EEOC (Charge No.: 420-2017-02285), which named both Jesse Creek Mining, LLC and Jamas Technology, Inc. The plaintiff alleged discrimination on the basis of race, national origin, and retaliation. The plaintiff wrote on his questionnaire that he was terminated just after he complained about his pay.

38.   On or about October 24, 2017, the defendants provided a position statement to the EEOC and that statement was sent to the plaintiff.

39.   On or about December 14, 2017, the EEOC sent the plaintiff a Dismissal and Notice of Rights, which the plaintiff received on December 28, 2017.

## VI.   CLAIMS

## Count One: Defendants Failed To Calculate And Pay Overtime Correctly Or To Keep Accurate Records in Violation of the FLSA.

40.   The plaintiff re-alleges and incorporates paragraphs 13-27 with the same force and effect as if fully set out in specific detail herein below.

41.   As set out above, the defendants Jesse Creek Mining, LLC and Jamas Technology, Inc. operated as a single employer and/or a joint employer of the plaintiff under the FLSA. At all times material to this action, the defendants

were a single enterprise engaged in commerce or in the production of goods for commerce as defined by the FLSA, 29 U.S.C. §203(s)(1).

42.    At all times relevant to this action, the defendants were the plaintiff's "employer" as defined by the FLSA, 29 U.S.C. §203(d).

43.    At all times material to this action, the plaintiff was an "employee" of the defendants as defined by the FLSA, 29 U.S.C. §203(e)(1). The plaintiffs worked for the defendants within the United States within three (3) years preceding the filing of this lawsuit.

44.     The defendants failed to calculate and pay overtime correctly under the FLSA, 29 U.S.C. §207.

45.    The plaintiff and other Security Guards routinely worked in excess of forty (40) hours per week. During such weeks, the defendants were required to pay the plaintiff 1.5 times his hourly wage of $17.00 for each hour worked in excess of forty (40) hours per week. 29 U.S.C. §207.

46.    During weeks when the plaintiff and other Security Guards worked in excess of forty (40) hours per week, the defendants were required to pay the plaintiff an hourly rate of $25.50 for each hour of overtime work.

47.    The defendants failed to pay the plaintiff at time-and-a-half. Instead, the defendants paid the plaintiff and other security guards $15.00 per hour for straight time, $22.50 for each hour of overtime, and $2.00 per hour for each

hour worked, regardless of whether that was straight time pay or overtime pay.

48.    The defendants told the plaintiff and other Security Guards that the $2.00 per hour was "tax free money."

49.    As such, the defendants have failed to pay the plaintiff and other Security Guards for each overtime hour worked.

50.    The plaintiff is entitled to the difference between the amounts owed and the amount paid, plus an equal amount of liquidated damages, as well as attorneys' fees and costs.

## Count Two: Retaliation in Violation of the FLSA.

51.    The plaintiff re-alleges and incorporates paragraphs 13-20, 28-39, and 40-50 with the same force and effect as if fully set out in specific detail herein below.

52.    The defendants terminated the plaintiff because he objected to, or refused to participate in, activities, policies, practices, or assigned tasks that he reasonably believed to be in violation of the FLSA.

53.    The defendants' decision to terminate the plaintiff violated of 29 U.S.C. § 218c and the cases and regulations.

## Count Three: Defendants Failed To Keep Adequate Records as Required by the FLSA.

54.    The plaintiff re-alleges and incorporates paragraphs 13-27 and 40-50 with the same force and effect as if fully set out in specific detail herein below.

55. The defendants failed to keep adequate records of the plaintiff's wages as required by the FLSA, 29 U.S.C. §§ 211(c) and 215(a).

## Count Four: Discrimination on the Basis of Race and National Origin in Violation of Title VII.

56. The plaintiff re-alleges and incorporates paragraphs 13-20 and 28-39 with the same force and effect as if fully set out in specific detail herein below.

57. The plaintiff was subjected to disparate treatment by the defendant Bestway based on race and/or national origin, which was Native American.

58. The plaintiff was terminated by the defendants based on his race and/or national origin, which was Native American.

59. The defendants had no legitimate non-discriminatory reason for their conduct and the reasons proffered by the defendants for the plaintiff's termination are unworthy of credence and are pretext for discrimination.

60. Similarly situated Caucasian employees were treated differently than the plaintiff in regard to the terms and conditions of employment, including training, assignments, discipline and application of work rules, and termination.

61. Because of such conduct, the plaintiff has suffered severe emotional distress, embarrassment, and humiliation.

62. The defendants' actions were willful, with malice and/or with reckless

disregard for the plaintiff's rights.

63. As a result and consequence of the defendants' actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

## Count Five: Discrimination on the Basis of Race, Ancestry and Ethnicity in Violation of 42 U.S.C. §1981.

64. The plaintiff re-alleges and incorporates paragraphs 13-20 and 28-39 with the same force and effect as if fully set out in specific detail herein below.

65. The plaintiff was subjected to disparate treatment with regard to job assignments, discipline, discharge and other terms and conditions of employment by the defendant based on his race, ancestry and/or ethnicity, which was Native American.

66. The plaintiff was terminated by the defendant based on his race, ancestry and/or ethnicity, which is Native American.

67. The defendants have no legitimate non-discriminatory reason for their conduct and the reasons proffered by the defendants for the plaintiff's termination are unworthy of credence and are pretext for discrimination.

68. Similarly situated Caucasian employees were treated differently than the plaintiff in regard to the terms and conditions of employment, including training, assignments, discipline and application of work rules, and termination.

69.   The defendants' actions were willful, with malice and/or with reckless disregard for the plaintiff's rights.

70.   As a result and consequence of the defendants' actions, the plaintiff has suffered pain, financial damage, embarrassment, trauma and humiliation.

## Count Six: Discrimination on the Basis of Retaliation in Violation of Title VII.

71.   The plaintiff re-alleges and incorporates paragraphs 13-20 and 28-39 with the same force and effect as if fully set out in specific detail herein below.

72.   The plaintiff engaged in protected activity when he voiced opposition to Manager Jerry Strope's offensive statements about his Native American race and heritage. The plaintiff also engaged in protected activity when he complained to Manager Ray Wilson about Strope's offensive statements about him.

## VII.   COLLECTIVE ALLEGATIONS (FAIR LABOR STANDARDS ACT)

73.   The plaintiff re-alleges and incorporates paragraphs 13-27 with the same force and effect as if fully set out in specific detail herein below.

74.   The plaintiff seeks certification of this action as a collective action on behalf of all individuals who have been employed by the defendants as a Security Guard at any time during the three (3) years immediately preceding this action. I have attached my Consent to Join a Collective Action. Ex. A.

75.    The plaintiff, and similarly-situated Security Guards, perform the same duties and responsibilities, and are subject to the defendants' illegal pay practices. These employees are similarly-situated to the other for purposes of their job duties.

76.    The plaintiff, and similarly-situated Security Guards who elect to participate in this action seek unpaid wages and overtime compensation, an equal amount of liquidated damages, and attorneys' fees and costs pursuant to 29 U.S.C. §216(b).

77.    The provisions set forth in the FLSA, 29 U.S.C. §207, apply to the defendants, to the plaintiff, and to all similarly-situated Security Guards employed by the defendants at any time during the last three (3) years.

78.    The plaintiff, and similarly-situated Security Guards, are engaged in interstate commerce and/or the production of goods for interstate commerce while working for the defendants. Their interstate commercial activity include, but are not limited to, providing security services for a coal mining operation, which markets a product though interstate commerce, transports that product through interstate commerce, and processing credit card transactions that cross state lines.

79.    The defendants failed to calculate and pay overtime correctly in violation of the FLSA, 29 U.S.C. §207. The plaintiffs are entitled to the difference between

the amounts owed and the amount paid, plus an equal amount of liquidated damages.

## IX.  DAMAGES

80.  The plaintiff is now suffering, and will continue to suffer irreparable injury from the defendants' unlawful conduct as set forth herein unless enjoined by this Court.

81.  Upon information and belief, the defendants have engaged in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay the plaintiff and other Security Guards in accordance with the FLSA, 29 U.S.C. §207.

82.  As a result of the defendants' violations of the FLSA, the plaintiff has suffered damages by failing to receive compensation in accordance with the FLSA, 29 U.S.C. §207.

83.  The defendants were aware of the requirements of the FLSA, and corresponding regulations and of their own violations of the FLSA during the relevant time period of three years prior to the date this action was filed. Despite this knowledge, the defendants failed to pay the plaintiff the wages required by the FLSA.

84.  The defendants have not made a good faith effort to comply with the FLSA.

85.  The defendants intentionally failed and/or refused to pay the plaintiff and other

Security Guards according to the provisions of the FLSA.

86.  The defendants failure to compensate the plaintiff and other Security Guards is willful and violates the FLSA.

87.  The plaintiff is entitled to recover liquidated damages in an amount equal to the amount of unpaid wages and benefits owed to him as well as prejudgment interest pursuant to 29 U.S.C. §216(b).

88.  The plaintiff is also entitled to an award of attorney's fees pursuant to 29 U.S.C. §216(b).

89.  The plaintiff has suffered embarrassment, humiliation, shame, damage to reputation, mental distress, emotional and physical pain and anguish and lost wages and other pecuniary losses as a consequence of the defendant's unlawful conduct.

90.  The plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for backpay, declaratory judgment, injunctive relief, and compensatory, punitive and liquidated damages is his only means of securing adequate relief.

## X.    PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully requests that this Court assume jurisdiction of this action and after trial:

1.     Grant the plaintiff a declaratory judgment holding that the actions of the defendants described hereinabove violated and continue to violate the rights of the plaintiff as secured by the Fair Labor Standards Act and/or Title VII of the Civil Rights Act of 1964 and 42 U.S.C. §1981.

2.     Grant the plaintiff a permanent injunction enjoining the defendant, its agents, successors, employees, attorneys and those acting in concert with the defendant and on the defendant's behalf from continuing to violate the Fair Labor Standards Act and/or Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. §1981.

3.     Issue an injunction ordering the defendant not to engage in discrimination and acts which violate the Fair Labor Standards Act; and/or Title VII of the Civil Rights Act of 1964 and/or 42 U.S.C. §1981.

4.     Grant the plaintiff an order requiring the defendants to make the plaintiff whole by reinstating him in the position she would have occupied in the absence of the discrimination as set out herein, backpay (plus interest), compensatory damages, liquidated damages, and punitive damages.

5.     The plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees and expenses.

6.      At the earliest possible time, certify a Collective Action, require the

defendant to disclose the names and contact information of all current

and former employees of the defendant employed as a Security Guard

at its Montevallo, Alabama location during the three (3) years

immediately preceding the filing of this suit, and permit the plaintiff to

send notice to those current and former employees.

**JURY DEMAND**
**THE PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY.**

Respectfully submitted,

*/s/ H. Wallace Blizzard*
H. Wallace Blizzard (ASB 8969-B59H)
WIGGINS, CHILDS, PANTAZIS,
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205.314-0500

*Counsel for Plaintiff*

**DEFENDANTS' ADDRESSES:**

Jesse Creek Mining, LLC
c/o Tony Bogolin
1615 Kent Dairy Rd
Alabaster, AL 35007

Jamas Technology, Inc.
c/o John L. Kontos
444 Finley Ave N
Birmingham, AL 35204